IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ALGIE BRADSHAW, ET AL. | : | |
| | : | CIVIL ACTION |
| v. | : | |
| | : | NO. 99-6366 |
| CAPACITY OF TEXAS INC., ET AL. | : | |

## MEMORANDUM

**SURRICK, J.**                                                    **AUGUST   26  , 2016**

Before the Court is Plaintiffs' Motion for Judgment *Non Obstante Veredicto* or, in the Alternative, New Trial on Factual Cause and/or Damages.  (ECF No. 67.)  For the following reasons, Plaintiffs' Motion will be denied.

## I.     BACKGROUND

In this action, Plaintiff Algie Bradshaw sought damages for injuries that he sustained as a result of a fall that he experienced while dismounting a "trailer jockey" yard tractor manufactured by Defendant Capacity of Texas, Inc. ("Capacity of Texas").  Plaintiffs brought this products liability claim alleging that Defendants' trailer jockey was defectively designed and lacked proper warnings.  Following a six-day trial, a jury returned a verdict in favor of Defendants. [1]  Plaintiffs move for post-trial relief under Federal Rules of Civil Procedure 50 and 59.

---

[1] In their Complaint, Plaintiffs asserted claims for negligence (Count I), products liability (Count II), breach of warranties (Count III), and loss of consortium (Count IV).  (Compl., ECF No. 1.)  Plaintiffs proceeded to trial exclusively on Counts II and IV.  (Verdict Slip, ECF No. 66.)

A.      **Procedural Background**

Plaintiffs began this action by filing a Complaint in the Court of Common Pleas of Philadelphia County against Defendants Capacity of Texas, Borg Warner Automotive, Inc., and Snyder Tank Corporation.  (Compl.)  Defendants Borg Warner Automotive, Inc. and Borg Warner Automotive Fuel Systems Corporation[2] (collectively "Borg Warner") removed the action to this Court.  (*Id.*)  Defendant Capacity of Texas joined in the removal.  (ECF No. 2.)  After the close of discovery, Defendants moved for summary judgment.  (ECF Nos. 31-32.)  Defendants' motions were denied.  (ECF Nos. 42-43.)

The case proceeded to trial by jury.  (June 9, 2003 Trial Tr. 57, ECF No. 74.)  Prior to closing arguments, all Defendants moved for judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure.  (*Id.* at 57-67.)  The motion was granted as to the Borg Warner Defendants, and they were dismissed from the case.  (*Id.* at 62.)  Defendant Capacity of Texas' motion was denied.  After closing arguments and the charge of the Court, the jury began its deliberations.  (June 10, 2003 Trial Tr. 3-30, ECF No. 75.)  A verdict in favor of Defendant Capacity of Texas and against Plaintiff was returned by the jury.  The jury determined that the trailer jockey that Plaintiff Algie Bradshaw used on the day of his fall was defective, but that the defect was not the cause of  Bradshaw's injury.  (Verdict Slip ¶¶ 1-2, on file with Court.)

Plaintiffs filed the instant Motion for Judgment *Non Obstante Veredicto*, or in the Alternative, New Trial On Factual Cause and/or Damages.  (ECF No. 67.)  Defendant Capacity of Texas filed an Answer to Motion of Plaintiff for Judgment as a Matter of Law or, in the Alternative, a New Trial on Factual Cause and/or Damages.  (ECF No. 69.)  Plaintiffs then filed a Supplemental Brief in Support of Plaintiffs' Motion for Judgment *Non Obstante Veredicto* or,

_____

[2] Borg Warner is improperly designated as Snyder Tank Corporation in the Complaint.

in the Alternative, New Trial on Factual Cause and/or Damages.  (Pls.' Suppl. Br., ECF No. 77.)

Defendant Capacity of Texas responded with a Supplemental Memorandum of Law in

Opposition to Motion of Plaintiffs for Judgment as a Matter of Law or, in the Alternative, a New

Trial.  (Def.'s Suppl. Br., ECF No. 78.)

### B.     Factual Background

Plaintiff Algie Bradshaw was working as a "relief jockey"[3] for Pepsi-Cola.  (Pls.' Br. 1,

ECF No. 67; Def.'s Suppl. Br. 1.)  In that capacity and while he was exiting a trailer jockey via

the rear step system, he slipped off of the bottom step and fell to the ground on his hands and

knees.  (June 4, 2003 Trial Tr. 60, ECF No. 71.)  Plaintiff injured his left foot.  As a result, he

was placed in a cast for six weeks.  (May 14, 2003 Schon Video Dep. 24.)  By the time of trial,

Plaintiff had undergone three surgeries on his foot as a result of the fall.  (*Id.* at 24, 47, 52.)

Plaintiffs Algie Bradshaw and his wife Dawn Bradshaw sued Capacity of Texas, the

manufacturer of the trailer jockey, and Borg Warner, the maker of the step fuel tank used in the

trailer jockey's rear step system.  (Def.'s Suppl. Br. 1.)  Plaintiffs claimed that the trailer

jockey's rear step system was defectively designed because of the inadequate depth of the in-

tank step, the lack of a second hand rail, and the lack of a warning.  They proceeded to trial

seeking damages for the injuries sustained by Algie Bradshaw as a result of the defective product

and for Dawn Bradshaw's loss of consortium.

---

[3] A relief jockey is one who moves tractor trailers to and from different areas in a shop
yard by using a vehicle known as a trailer jockey.  A trailer jockey is equipped to latch on to a
trailer in a manner similar to how the cab of an 18-wheeler is connected to the trailer it is
hauling.

## II.   LEGAL STANDARD

### A.   Standard of Review under Rule 50[4]

Federal Rule of Civil Procedure 50 permits a court to enter judgment as a matter of law where "the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the [nonmoving] party on that issue." Fed. R. Civ. P. 50(a)(1). "[I]n entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000). All reasonable inferences must be drawn in favor of the nonmoving party, and the court is not permitted to make credibility determinations or weigh the evidence. *Id.* "The question is not whether there is literally no evidence supporting the party against whom the motion is directed but whether there is evidence upon which the jury could properly find a verdict for that party." *Walter v. Holiday Inns, Inc.*, 985 F.2d 1232, 1238 (3d Cir. 1993) (internal quotation marks and citation omitted).

Where the movant bears the burden of proof at trial, a "strict test" must be met. *Fireman's Fund Ins. Co. v. Videfreeze Corp.*, 540 F.2d 1171, 1177 (3d Cir. 1976), *cert. denied*, 429 U.S. 1053 (1977). The test "requires the judge to test the body of evidence not for its insufficiency to support a finding, but rather for its overwhelming effect." *Id.* (internal quotation marks and citations omitted). The court must be able to say "not only that there is sufficient evidence to support the finding, even though other evidence could support as well a contrary finding, but additionally that there is insufficient evidence for permitting any different finding." *Id.* (internal quotation marks and citations omitted). "[C]onflicting evidence which could

---

[4] The Federal Rules of Civil Procedure have "abandon[ed] the terminology 'direction of verdict' and 'judgment notwithstanding the verdict' and its latin counterpart 'judgment *non obstante veredicto*' (JNOV)." *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 688 n.1 (3d Cir. 1993). Rule 50 "substitutes the terminology 'judgment as a matter of law,' a term that also appears in Rule 56(c)." *Id.* Plaintiffs' Motion will be evaluated under the Rule 50 standard.

reasonably lead to inconsistent conclusions will not justify a judgment notwithstanding the verdict . . . . It is the function of the trier of fact alone, the jury in this instance, to evaluate contradictory evidence and to draw inferences therefrom." *Id*. at 1178 (citations omitted).

**B.      Standard of Review Under Rule 59**

Federal Rule of Civil Procedure 59 permits a court to order a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court." Fed. R. Civ. P. 59(a)(1)(A).  Rule 59(a) does not specify the basis on which a court may grant a new trial, but rather leaves the decision to the discretion of the district court. *See Blancha v. Raymark Indus.,* 972 F.2d 507, 512 (3d Cir. 1992) ("The decision to grant or deny a new trial is confided almost entirely to the discretion of the district court.") (citing *Allied Chem. Corp. v. Daiflon, Inc.,* 449 U.S. 33, 36 (1980)).  Courts have granted new trials when there have been prejudicial errors of law or when the verdict is against the weight of the evidence. *See Maylie v. Nat'l R.R. Passenger Corp.,* 791 F. Supp. 477, 480 (E.D. Pa. 1992), *aff'd*, 983 F.2d 1051 (3d Cir. 1992) (citations omitted).

The scope of the district court's discretion when deciding a Rule 59 motion depends on whether the motion is based on a prejudicial error of law or on a verdict alleged to be against the weight of the evidence. *See Klein v. Hollings,* 992 F.2d 1285, 1289-90 (3d Cir. 1993).  When the basis of the motion involves a matter within the trial court's sound discretion, such as the court's evidentiary rulings or points for charge to the jury, the trial court has wide latitude in deciding the motion. *Link v. Mercedes-Benz of N. Am., Inc.,* 788 F.2d 918, 921-22 (3d Cir. 1986); *see also Klein,* 992 F.2d at 1289-90.  The court must determine:  (1) "whether an error was in fact made;" and (2) "whether that error was so prejudicial that refusal to grant a new trial would be inconsistent with substantial justice." *Bhaya v. Westinghouse Elec. Corp.,* 709 F. Supp. 600, 601

5

(E.D. Pa. 1989) (internal quotation marks and citation omitted).

However, the district court's discretion to order a new trial is narrower when the verdict is alleged to be against the weight of the evidence, *Klein,* 992 F.2d at 1290, and the district court is cautioned not to "substitute its 'judgment of the facts and the credibility of the witnesses for that of the jury,'" *Fineman v. Armstrong World Indus., Inc.,* 980 F.2d 171, 211 (3d Cir. 1992), *cert. denied*, 507 U.S. 921 (1993) (quoting *Lind v. Schenley Indus. Inc.,* 278 F.2d 79, 90 (3d Cir. 1960) (en banc), *cert. denied*, 364 U.S. 835 (1960)).  Since a determination that a jury's verdict was against the weight of the evidence "effects a denigration of the jury system," a court may grant such motion "only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience." *Williamson v. Consol. Rail Corp.,* 926 F.2d 1344, 1352-53 (3d Cir. 1991) (citation omitted).

## III.   DISCUSSION

With regard to both the Motion under Rule 50 and the Motion under Rule 59, Plaintiffs make three primary arguments that they contend entitle them to relief:  (1) that the verdict was against the weight of the evidence (Pls.' Suppl. Br. 2-11); (2) Defendants improperly introduced negligence concepts into the proceedings (*id.* at 11-19); and (3) the court misled the jury by delivering improper jury instructions (*id.* at 19-23).

### A.   Plaintiffs' Rule 50 Motion for Judgment as a Matter of Law

Plaintiffs first move for judgment as a matter of law.  Plaintiffs argue that the uncontroverted evidence presented at trial established that a defect in the trailer jockey was the factual cause of Algie Bradshaw's injuries.  Defendants respond that Plaintiffs' motion for judgment as a matter of law must be dismissed because Plaintiffs failed to make a Rule 50(a)

6

motion at trial.  Defendants contend that Plaintiffs have waived the right to move for judgment under Rule 50(b)

"A motion for judgment as a matter of law may be made at any time before the case is submitted to the jury."  Fed. R. Civ. P. 50(a)(2).  "If the court does not grant a motion for judgment as a matter of law made under Rule 50(a) . . . a renewed motion for judgment as a matter of law" may be made "[n]o later than 28 days after the entry of judgment."  Fed. R. Civ. P.  50(b).  "Therefore, under Rule 50(b), a court cannot enter a judgment as a matter of law unless the party seeking the judgment made a Rule 50(a) motion at the close of *all of the evidence*."  *Larami Corp. v. Amron*, No. 91-6145, 1995 WL 128022, at *1 (E.D. Pa. Mar. 23, 1995) (emphasis in original) (citations omitted); *see also Williams v. Runyon,* 130 F.3d 568, 571-72 (3d Cir. 1997) ("[A] defendant's failure to raise an issue in a Rule 50(a)(2) motion with sufficient specificity to put the plaintiffs on notice waives the defendant's right to raise the issue in their Rule 50(b) motion." (citations omitted)); *Yohannon v. Keene Corp.*, 924 F.2d 1255, 1261 (3d Cir. 1991) ("A motion for judgment notwithstanding the verdict cannot be made unless a motion for directed verdict was made by the party at the close of all the evidence." (citation omitted)); *Lowenstein v. Pepsi-Cola Bottling Co. of Pennsauken*, 536 F.2d 9, 10 (3d Cir. 1976) (noting that "Rule 50(b) requires that, as one predicate to judgment N.O.V., a motion for a directed verdict be made after presentation of all the evidence"); *Wood v. Cohen*, No. 96-3707, 1999 WL 83945, at *7 (E.D. Pa 1999), aff'd, 205 F.3d 1331 (3d Cir. 1999) (Plaintiff who did not make a motion at the close of evidence under Rule 50(a) has waived the right to make a motion under Rule 50(b)).

Here, unlike Defendants, Plaintiffs failed to move for judgment as a matter of law at the close of the evidence and prior to the case being submitted to the jury.  (*See* June 9, 2003 Trial

Tr. 57-67.)  Plaintiffs' failure to do so is fatal to their Motion pursuant to Rule 50(b).

Accordingly, Plaintiffs' Motion for judgment as a matter of law must be denied.[5]

### B.    Plaintiffs' Rule 59 Motion for New Trial

*1.    Whether the Verdict was Against the Weight of the Evidence*[6]

Plaintiffs first contend that they are entitled to a new trial because the verdict was against

the weight of the evidence.  Plaintiffs focus their sufficiency of the evidence attack on the

testimony of expert witnesses George Widas and Lew Schon, M.D., and on the testimony of

Plaintiff Algie Bradshaw.  (Pls.' Suppl. Br. 2-11.)  Plaintiffs contend that the jury's conclusion,

that the trailer jockey was defective but was not the factual cause of Algie Bradshaw's injuries, is

against the weight of the evidence.  (*Id.* at 2.)  Defendant Capacity of Texas responds that the

jury's verdict was clearly supported by the evidence presented at trial.  (Def.'s Suppl. Br. 40-54.)

To recover on their strict liability claim under Pennsylvania law, Plaintiffs were required

to establish that the trailer jockey was defective and that the defect was the factual cause of

---

[5] Even if Plaintiffs had not waived the right to raise a Rule 50(b) motion, such a motion would be denied on the merits.  As discussed in greater detail *infra*, the jury's verdict was sound and cannot be considered to be against the weight of the evidence.

[6] Although Defendant Capacity of Texas has not raised the argument here, we note that similar to the prerequisites for raising a Rule 50 motion, a Rule 59 post-trial attack on the sufficiency of the evidence requires an aggrieved party to have moved for a directed verdict at the close of all the evidence.  *Yohannon*, 924 F.2d at 1262 (noting that "[o]n sufficiency, the failure to move for a directed verdict at the close of all evidence does more than limit an aggrieved party's remedy to a new trial.  In this Circuit, it wholly waives the right to mount any post-trial attack on the sufficiency of the evidence" (citations omitted); *see also Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 364 (3d Cir. 1999) (same); *Hussein v. Universal Dev. Mgmt., Inc.*, No. 01-2381, 2006 WL 8091008, at *5 (W.D. Pa. Jan. 3, 2006) (same); *Stadtlander Drug Co., Inc. v. Brock Control Sys., Inc.*, 174 F.R.D. 637, 640-41 (W.D. Pa. 1997) (same).  Plaintiffs did not move for a directed verdict prior to the case being submitted to the jury.  Accordingly, Plaintiffs have forfeited the right to seek a new trial under Rule 59 based upon a sufficiency of the evidence challenge.  As will be discussed, however, even if Plaintiffs had not waived their right to raise this post-trial attack on the sufficiency of the evidence, the jury's verdict was clearly supported by the evidence of record.

Bradshaw's injuries.  (Verdict Slip); *see also Surace v. Caterpillar, Inc.*, 111 F.3d 1039, 1053

(3d Cir. 1997) ("The plaintiff must establish that:  (1) the product was defective; and (2) the

defect was a proximate cause of the injury.").[7]  Plaintiffs claimed that the trailer jockey's rear

step system was defectively designed because of inadequate depth of the in-tank step, the lack of

a second handrail, and the lack of a warning.  (*See, e.g.*, June 9, 2003 Trial Tr. 77-84.)  Based

upon the testimony presented at trial, there is more than a sufficient basis for the jury to conclude

that Bradshaw's injuries were not caused by a defect in the trailer jockey.

     Plaintiffs' expert George Widas did testify that the trailer jockey contained design and

warning defects, and that such defects caused Bradshaw's injuries.  (June 4, 2003 Trial Tr. 140-

43.)  However, on cross-examination, Widas agreed that the trailer jockey complied with many

of the Federal Department of Transportation Regulations for a "ladder type climb system."  (*Id.*

at 154-58.)  In addition, he acknowledged that "in a literal sense," the rear climb system allowed

a user to maintain safe "three-limb contact," despite its lack of a second handrail.  (*Id.* at 157.)

Widas also concluded that to make the rear climb system "safer" Defendant could "put a

warning" alerting users to alight from the trailer jockey from the rear climb system facing

inward.  (*Id.* at 142.)  The jury was free to accept or reject all, some, or none of Widas'

testimony.  Clearly the jury could have concluded based on Widas' testimony that the sole defect

---

[7] Many courts have chosen to utilize the more stringent "proximate cause" in lieu of "factual cause" when charging a jury with deciding a strict products liability claim.  Our use of the more liberal "factual cause" here only served to benefit Plaintiffs, as the scope of responsibility is widened under that standard.  *See Van Buskirk v. Carey Canadian Mines, Ltd.*, 760 F.2d 481, 492 (3d Cir. 1985) ("Although there can be more than one proximate cause, all factual (but for) causes are not necessarily proximate causes.").

in the rear climb system was Defendant's failure to place a warning on the trailer jockey about safe entering and exiting procedures.[8]

The jury question of causation would have necessarily turned on whether Algie Bradshaw would have heeded a proper warning. *Phillips v. A-Best Products Co.*, 665 A.2d 1167, 1171 (Pa. 1995) ("For the plaintiff in a failure-to-warn claim to establish the second element, causation, the plaintiff must demonstrate that the user of the product would have avoided the risk had he or she been warned of it by the seller."). Although there is a presumption in Pennsylvania that a plaintiff would follow an adequate warning, such a presumption can be rebutted by evidence that the warning would not have been heeded. *Coward v. Owens-Corning Fiberglas Corp.*, 729 A.2d 614, 621 (Pa. Super. Ct. 1999). Here, neither of the alleged primary dangers—short step depth and lack of a second handrail—were hidden from the user of the rear climb trailer jockey system. It is reasonable to conclude that regular use of such a system would expose the risks associated with disembarking the trailer jockey without maintaining three-limb contact at all times.

Algie Bradshaw testified that he climbed up and down the trailer jockey steps approximately 4,500 times. (June 4, 2003 Trial Tr. 100.) It is reasonable to conclude from this testimony that Bradshaw had become thoroughly familiar with the step depth and railing on the rear climbing system, and was fully aware that he would be able to maintain three-limb contact when exiting the rear climb system by facing the steps. A warning would have added little to Bradshaw's intimate knowledge of the product. There was more than sufficient evidence from which the jury could conclude that Bradshaw knew of the risks inherent in the rear step system

---

[8] In addition to the Widas testimony, the jury heard evidence from Defendants' expert in automotive engineering, Douglas Brooks. Brooks testified that the trailer jockey's design satisfied federal regulations requiring three-limb contact. (June 6, 2003 Trial Tr. 100-01.) In addition, he testified that the trailer jockey met step depth and size requirements of various standards and regulations. (*Id.* at 101-04.)

and that he would not have heeded any warnings about such risks.  Adding further weight to such

a conclusion, Bradshaw testified that even after his accident and first two surgeries, he continued

to go down the rear steps in the same way that he went down the steps at the time of his accident.

(*Id.* at 101-02.)

    With regard to the testimony of Dr. Schon, his conclusions add little to the question of

factual causation.  He concluded that Bradshaw's fall was responsible for his nerve injuries and

subsequent need for surgery (May 14, 2003 Schon Video Dep. 47),  but he did not provide any

testimony regarding whether Bradshaw's fall was caused by a failure to warn.

    The jury's decision finds ample support in the record.  There was substantial evidence to

support the jury's finding that Bradshaw would not have heeded a safety warning and that

Defendant Capacity of Texas' failure to warn was not the factual cause of Bradshaw's injury.

*See Maldonado v. Walmart Store No. 2141*, No. 08-3458, 2011 WL 1790840, at *14 n.12 (E.D.

Pa. May 10, 2011) ("To show that the hazardous condition was the cause-in-fact of an injury, a

plaintiff must demonstrate that the condition was a but for cause of that injury." (citation

omitted)).  This verdict does not constitute a manifest injustice.  Assuming that Plaintiffs did not

waive the right to file a Rule 59 Motion, the Motion must be denied on the merits.  *See, e.g.,*

*Overpeck v. Chicago Pneumatic Tool Co.*, 823 F.2d 751, 755-57 (3d Cir. 1987) (upholding trial

court's reversal of a jury verdict because any conclusion that plaintiff would have heeded a

warning on a tire changing machine was pure speculation); *Conti v. Ford Motor Co.*, 743 F.2d

195, 196-97 (3d Cir. 1984) (reversing a District Court's decision to uphold the jury verdict

because auto manufacturer's failure to warn did not cause a woman's injuries since her husband

was aware of the danger of starting a car without disengaging the clutch); *Phillips*, 665 A.2d at

1171 (affirming the Superior Court's holding that a factory worker who knew of the dangers of

inhaling silica dust could not establish causation in a failure to warn claim); *Sherk v. Daisy-Heddon*, 450 A.2d 615, 618 (Pa. 1982) (holding that because "the lethal propensity of a[n] [air rifle] was known or should have been known to the user, liability cannot be imposed upon the manufacturer merely because the manufacturer allegedly ha[d] failed to warn of that propensity").

2.   *Whether Defendants Improperly Introduced Negligence Concepts*

Plaintiffs next contend that they are entitled to a new trial because Defendants improperly introduced negligence concepts into a strict liability claim, prejudicing the jury on the issue of causation.  (Pls.' Suppl. Br. 11-19.)  Defendants respond that all of the evidence that they presented was proper, did not introduce negligence concepts, and did not lead to any unfair prejudice.

In order for a product to be found defective under Pennsylvania law, a trial judge must first determine, under a weighted review of the evidence, whether a product is unreasonably dangerous.  *Moyer v. United Dominion Indus., Inc.*, 473 F.3d 532, 538, 540 (3d Cir. 2007).  If the judge concludes that a product is unreasonably dangerous, the case is submitted to the jury to determine if the product was defective and if the defect caused the plaintiff's injury.  *Id.* at 538. "The Pennsylvania Supreme Court intends that this division of labor between judge and jury will preserve the substantive distinction between strict liability and negligence causes of action."  *Id.* at 539.  However, evidence relied upon by a judge in deciding whether a particular product is unreasonably dangerous can also be considered by a jury if it is relevant to the issue of causation or lack of defect.  *Id.* at 542.

Plaintiffs argue that Defendant Capacity of Texas introduced negligence concepts into the trial when it "re-argued the reasonableness of its conduct before the jury" through the "'incident

history"' testimony of Gene Wright and Douglas Brooks.  (Pls.' Suppl. Br. 15.)  Plaintiffs

concede that evidence of prior accidents to show lack of defect is permissible.  However, they

claim that Defendants used such evidence to make a reasonableness argument.  (*Id.* at 16.)[9]

Even if the testimony about accidents involving the trailer jockey was used to argue the

reasonableness of Defendants' conduct with regards to the safety of its product, such an

argument still speaks to the issue of defect and not causation—if Defendants' conduct was

deemed reasonable, then it follows that their product would not contain a material defect.

Defendants' behavior is one-step removed from the issue of causation.  Because the jury found

the trailer jockey to be defective, any error benefiting Defendants on this issue was harmless.

*See Moyer*, 473 F.3d at 545 ("An error is harmless only if it is highly probable that the error did

not affect the outcome of the case." (citation and internal quotation marks omitted)).

Next, Plaintiffs argue that Defendants introduced negligence concepts into the trial during

the testimony of Gene Wright and Michael York when they asked how the "typical" or

"prototypical" person would have alighted the trailer jockey.  (Pls.' Suppl. Br. 16-17.)  Plaintiffs

further aver that negligence principles were introduced when Defendants asked Bradshaw about

the level of care he used on the day of the accident.  (*Id.* at 17.)  Even though such information

would be useful for apportioning liability under a theory of comparative negligence, the evidence

here was used directly for the issue of factual causation and was not improperly admitted.

Certainly Defendants are allowed to argue, as they did, that Bradshaw's conduct was the sole

cause of the accident and that any warning provided by Defendants would have been futile in

altering his behavior.  *See, e.g., Moyer*, 473 F.3d at 543 ("[A defendant's] evidence should [be]

---

[9] We note that Plaintiffs opened the door to testimony about the three known prior accidents involving the trailer jockey during their cross-examination of Wright.  (*See* June 5, 2003 Trial Tr. 74-78.)

admitted if it ha[s] any tendency to show that [a] plaintiff's injuries were caused solely by misuse [of the product].");  *Clark v. Bil-Jax, Inc.,* 763 A.2d 920, 923 (Pa. Super. Ct. 2000) ("[E]vidence of a plaintiff's . . . misuse of a product . . . is admissible [in a products liability action] insofar as it relates to the element of causation.") (internal quotation marks omitted);  *Madonna v. Harley Davidson, Inc.,* 708 A.2d 507, 509 (Pa. Super. Ct. 1998) ("[W]here the defense offers evidence to establish that the accident was *solely* the result of the user's conduct, and not related in any way with a product defect, it is relevant and admissible for the purpose of proving causation" (emphasis in original)).[10]

This record does not support a conclusion that the testimony Defendants elicited at trial resulted in a manifest prejudice.  Plaintiffs' Rule 59 Motion for a new trial, on the basis of Defendants' use of evidence, will be denied.

> 3.    *Whether the Jury Was Misled and Confused from Improper Jury Instructions*

Plaintiffs' final argument is that they are entitled to a new trial because the Court erred in charging the jury on the issues of the "heeding presumption" and "factual cause."  (Pls.' Suppl. Br. 19-23.)  Defendant contends that the instruction was proper.

---

[10] Plaintiffs further contend that counsel for Defendants improperly told the jury during closing argument that the trailer jockey had "been ascended/descended over a '**billion**' times despite the Trial Court's ruling that such evidence was not admissible."  (Pls.' Suppl. Br. 18 (citing June 6, 2003 Trial Tr. 80-82; June 9, 2003 Trial Tr. 110-12).)  Although we did exclude such evidence due to its speculative nature (*see* June 5 Trial Tr. 8-9; June 6, 2003 Trial Tr. 80-82), mere mention of such hypothetical figures does not rise to the level of a manifest injustice warranting a new trial.  That the jury requested a list of lawsuits against Defendant Capacity of Texas does not, as Plaintiffs suggests, evidence the jury's confusion over the issues before them.  From our view during trial, there was no reason to suggest that the jury would have been adversely affected by Defendants' counsel's statements.  *See Fineman,* 980 F.2d at 207 (deferring to the district court's assessment of "prejudicial impact," "[b]ecause the trial judge was present and able to judge the impact of counsel's remarks" and "is in a far better position . . . to appraise the effect of the improper argument of counsel").

As discussed above, there is a presumption in Pennsylvania that a plaintiff would follow a manufacturer's or seller's warning as to safe product operation.  *Coward*, 729 A.2d at 621.  However, such a presumption can be rebutted by "evidence that such a warning would not have been heeded."  *Id.*

With regard to the heeding presumption, the jury was instructed as follows:

And ladies and gentlemen, the manufacturer of a product is required to give warnings and instructions if it's necessary to make the vehicle safe for use. Whether or not instructions are necessary is a decision in the case that you must decide based on all the evidence and testimony provided in this matter.

If you find, ladies and gentlemen, that there were warnings and instructions required to make the trailer jockey and/or its step system non-defective which were not provided by the defendant, you may then find for the defendant based on a determination that even if there had been adequate warnings or instructions, the plaintiff would not have read or heeded them.

Let me say that again, because I think I might have misstated what I just said.  If you find that there were warnings or instructions required to make the trailer jockey non-defective which were not provided by the defendant, then you may not find for the defendant based upon a determination that even if there had been adequate warnings or instructions, the plaintiff would not have read or heeded them.  Instead, ladies and gentlemen, the law presumes and you must presume that if there had been adequate warnings or instructions that the plaintiff would have heeded those warnings or instructions.

However, ladies and gentlemen, the law also provides that such a presumption may be rebutted by evidence tending to show that even if such warnings were given, it would not have been heeded.  If you find that based upon the evidence, it is more probable than not that people using the trailer jockey would not have followed a warning or instruction, then you must find that the absence of such a warning or instruction is not a factual cause of harm.

Now, ladies and gentlemen, if you find that there were warnings or instructions required to make this product non-defective, which were not provided by the defendant, then you must determine whether the failure by the defendant was a factual cause of the harm to the plaintiff.  The question, in other words, ladies and gentlemen, is whether the plaintiff would have been harmed if the needed warning had been provided.  If you find that the plaintiff would have acted to avoid the underlying hazard, if such a warning had been provided, then you should find on this issue in favor of the plaintiff.  Otherwise, you should find for the defendant.

(June 10, 2003 Trial Tr. 17-18.)

While the Court did begin the instruction on the heeding presumption incorrectly, the mistake was immediately identified and corrected.  The jurors were told that the Court had "misstated," the instruction and that the instruction would be restated correctly.  The Court went on and gave the proper instruction.  Given the instruction in its entirety, this one misstatement could not have confused the jury.  The heeding presumption was explained in great detail in accordance with the Pennsylvania Suggested Standard Civil Jury Instructions.  Therefore, the jury was properly charged as to the heeding presumption.[11]  *See* Pa. SSJI (Civ), §§ 16.30-16.60.[12]

As to the factual cause charge, Plaintiffs contend that the instruction was in error and misled the jury because it did not provide proper context.  (Pls.' Suppl. Br. 22-23.)  Plaintiffs aver that by not including the Pennsylvania Suggested Standard Civil Jury Instructions § 3.25[13], the jury could not understand that the defect did not need to be the only cause of Bradshaw's injuries to be a factual cause of his injuries.  (*Id.* at 22.)

Since Plaintiffs did not object to the jury charge on the basis that the explanation of factual cause was incomplete or in error, their objection now is untimely.  *See* Fed R. Civ. P. 51(c)(1) ("A party who objects to an instruction or the failure to give an instruction must do so on the record, stating distinctly the matter objected to and the grounds for the objection."); *see*

---

[11] Plaintiffs' suggestion that the Court should not have instructed the jury that the heeding presumption was rebuttable simply finds no support.  As we have explained above, Defendants presented sufficient evidence from which a reasonable juror could conclude that Plaintiff Bradshaw would not have heeded an adequate warning about proper trailer jockey dismounting procedures.

[12] Formerly § 8.03.

[13] Currently § 13.20.

*also Franklin Prescriptions, Inc. v. New York Times Co.*, 424 F.3d 336, 339 (3d Cir. 2005) ("Merely proposing a jury instruction that differs from the charge given is insufficient to preserve an objection." (citations omitted)).  In addition, the supplemental instruction Plaintiffs now propose is a jury instruction specifically modeled for negligence actions, not for those distinctly sounding in products liability.  *Compare* Pa. SSJI (Civ), § 13.20 (defining factual cause for negligence actions) *with* § 16.70 (defining factual cause for products liability actions).  Even though it may have elements in common with a negligence action, a products liability claim is considered a distinct legal cause of action.[14]  *Hoffman v. Paper Converting Mach. Co.*, 694 F. Supp. 2d 359, 368 (E.D. Pa. 2010) ("'Negligence and strict liability are distinct legal theories.'" (quoting *Phillips v. Cricket Lighters*, 841 A.2d 1000, 1008 (Pa. 2003))).

The court instructed the jury that if "the product was defective, the defendant is liable for *all* harm caused by such a defective condition."  (June 10, 2003 Trial Tr. 15 (emphasis added).) We went on to instruct that "[a] defective condition is a factual cause of harm if the harm would not have occurred absent the defect."  (*Id.*)  We are satisfied that the causation instructions to the jury clearly and adequately expressed that, in order to meet their burden of proof, Plaintiffs were required to demonstrate that Bradshaw's injuries were, in fact, caused by Defendant's defective product.  No further explanation was necessary.  Plaintiffs' Rule 59 Motion for a new trial will be denied.

## IV.   CONCLUSION

Plaintiffs had a full and fair opportunity to present their case to a jury.  While Plaintiffs have waived most of the post-trial challenges that they bring here, the record itself does not

---

[14] Plaintiffs themselves have strongly asserted "that negligence issues and concepts have no place in products liability actions."  (Pls.' Suppl. Br. 16.)

support the granting of a judgment as a matter of law or a new trial.  The jury's verdict was

soundly based upon the evidence of record.  Plaintiffs' Motion for post-trial relief will be denied.

      An appropriate Order follows.

**BY THE COURT:**

_____

**R. BARCLAY SURRICK, J.**